PORTMAN, Respondent, vs. CAPPON, Appellant.

*November 19, 1910—February 21, 1911.*

*Master and servant: Injury: Defective machinery: Accident: Evidence.*

In an action for injuries to a servant, caused by a dowel pointer flying from the machine at which he was working, the evidence is *held* to show that the tool did not fly from the machine because of any improper construction or want of repair thereof; that plaintiff's claim that the nut which secured the tool, after

Portman v. Cappon, 145 Wis. 126.

being screwed on tight, came off during the operation of the machine, was not supported by the evidence and was contrary to physical laws; and that, even if it were conceded that the nut did come off, it was a pure accident, for which defendant was not responsible.

APPEAL from an order of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed*.

Action for personal injuries. Plaintiff was twenty-four years old and a carpenter by trade, of foreign birth, having been in this country but three and one-half years, could not speak English, and was unfamiliar with machinery. Defendant was the owner of a factory wherein were operated certain machines in connection with his business of manufacturing sash, doors, cabinets, and window frames. Plaintiff was employed by the defendant on the 10th day of May, 1907, and did various work about the factory. About a month after he was employed, at the direction of defendant plaintiff was set to work at what is called a "dowel machine," designed and operated for the purpose of trimming the edges or ends off of dowels or small pieces of wood, and had worked at it about three hours two or three days before the accident. The machine consisted of a piece of shafting of iron or steel, resting on a wooden framework about four feet above the floor. At one end of the shaft was a round opening a little less than one-half inch in diameter, extending into the shaft to a depth of two inches from the end. The diameter of the hole increased slightly with its depth; that is, the diameter was larger at the inner end of the hole than at its opening at the end of the shaft. There were four slits in the end of the shaft about one-sixteenth of an inch wide, extending in as far as the hole, thus dividing it into four equal prongs. These prongs had a graduated thread on the outside for about an inch and one-half from the end, on which there was a nut to be used in making the opening larger or smaller by turning the nut with a wrench, the opposite end of the shaft

being set in the framework. The diameter of the shaft or chuck increased slightly from the end, so that, as the nut was screwed on, the inside opening would be diminished and the prongs would firmly engage the shank of the tool inserted. The diameter of the dowel pointer decreased slightly from the end, and, therefore, when fully inserted its whole shank would closely fit the opening. Then when the nut was screwed on tight, the opening at the end of the chuck would be smaller than the inner end of the shank of the dowel pointer, and it could not come out as long as the nut was on. The power was conveyed to the shaft by a belt running from another shaft near the floor, where there was a live and dead pulley and a belt shifter. The shaft revolved at a speed of about 2,000 revolutions per minute, which speed could not be checked or reduced except by entirely cutting off the power. In the opening in the end of this shaft were inserted different tools, according to the kind of work to be done, which were fastened by screwing the nut toward the framework, and the tool, while so held, would of course revolve with the same rapidity as the shaft.

Plaintiff's work and duty required him to press pieces of wood against the revolving tool in the shaft. On the day he was injured plaintiff was engaged in operating the above described machine, and, while the shafting was revolving, the dowel pointer inserted therein in some manner got loose and flew therefrom, struck plaintiff, and permanently destroyed the sight of his left eye.

At the close of the evidence defendant moved the court to direct a verdict in his favor, which motion was granted. Thereupon plaintiff moved for a new trial, and the court made an order vacating and setting aside its former order directing a verdict in favor of defendant, and granted plaintiff's motion for a new trial, from which order defendant appealed.

For the appellant there were briefs by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Glicksman, Gold & Corrigan,* and oral argument by *W. L. Gold.*

The following opinion was filed December 6, 1910:

VINJE, J. The plaintiff alleged a want of repair of the machine and an improper construction of the chuck thereof, by reason of which the dowel pointer could not be securely fastened, but would become loose and be thrown therefrom when the shafting revolved. There was no evidence that any part of the machine other than the chuck and dowel pointer was out of repair, and the only evidence as to these parts being out of repair was that the shank of the latter was a trifle worn. But it is evident from the description of the chuck, and shank of the dowel pointer, set out in the statement of facts,—showing that the diameter of the shank increased toward the end, while that of the hole in the chuck decreased and was appreciably diminished by the screwing on of the nut,—that a slight wear of the shank would not permit it to come out when the nut was on. The chuck and dowel pointer are in evidence, and a careful examination of them shows that it is physically impossible for the dowel pointer to come out as long as the nut is on the chuck. It follows that even if the shank of the dowel pointer was a little worn, which is questionable, it did not affect its being securely held in the chuck when the nut was on.

The only witness who testified that the machine was improperly constructed, said it was so "because the chuck I do not think would be secure when held by a nut pressed back on the shaft as that nut is." "I would still say I would not think it would hold even if it had been run for ten years and it had always held the dowel." For reasons already stated, this testimony is completely nullified by the construction of the chuck, and shank of the dowel pointer, and must be disregarded. There was no other evidence of improper construction or of a want of repair of the machine. It was urged, however, by counsel for plaintiff that the nut came off

at the time of the accident and that it did so owing to a de-
fective condition of the machine. The only evidence that
could in any sense be said to support such a claim was the
testimony already quoted. But testimony that the chuck
would not be secure when held by a nut pressed back on the
shaft falls far short of supporting the claim that the nut it-
self was liable to come off, or did come off, when the machine
was in operation, especially in view of the undisputed fact
that the shaft revolved to the left and the nut turned to the
right. Under such circumstances the operation of the ma-
chine would tend to tighten, not loosen, the nut.

The plaintiff testified that a couple of hours before the ac-
cident the defendant's foreman, Schroeder, assisted him in
removing a tool from the chuck that had become so securely
fastened that he could not get it out; that the foreman then
wrapped some paper around the shank of the dowel pointer,
inserted it in the chuck, and *screwed the nut on tight*. The
foreman admits that he took the tool out for plaintiff, but de-
nies that he put the dowel pointer in. He testified that when
he went away the dowel pointer was out, and the nut was ly-
ing on the frame of the machine, a little to the left and about
four inches back of the end of the chuck. The testimony is
that the nut was first seen in the place described by the fore-
man a few minutes after the accident.

Plaintiff's case must rest upon the fact that the foreman
put the dowel pointer in the chuck and screwed the nut on
tight, and upon the further undisputed fact that the nut
was off shortly after the accident. This raises the question
as to whether or not there is any evidence to sustain a finding
that after the nut was screwed on tight it had come off during
the operation of the machine. As we have already stated,
there is no such evidence, and if there were it would be con-
trary to physical laws in view of the construction of the ma-
chine. But even if it were conceded that the nut did come
off, there would be no liability on the part of the defendant,

for the plaintiff testified that the foreman screwed the nut on tight, and the undisputed evidence is that during an operation of over five years it had never come off before. The nut, chuck, and thread were in good repair, were not worn or loose, and if the nut came off after it was screwed on tight it was a result that no one could foresee—a pure accident for which no one was responsible. *Wickert v. Wis. Cent. R. Co.* 142 Wis. 375, 125 N. W. 943. It follows that the order of the trial court vacating the order directing a verdict for defendant and granting plaintiff's motion for a new trial was erroneous.

*By the Court.*—The order of the circuit court is reversed, and the cause remanded with directions to enter judgment for defendant.

A motion for a rehearing was denied February 21, 1911.